## Continuation of Application for Search Warrant

I, David T. Deuman, Special Agent of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, depose and state under oath that:

## Executive Summary

1. This application seeks authorization for a warrant to search a Samsung Galaxy, Black in color, bearing IMEI #352574111588651 on the back cover (the SUBJECT DEVICE) belonging to Ryan Romario DOOKHAN currently located at Homeland Security Investigations 228 Magazine Street, Sault St. Marie, 49783. DOOKHAN is suspected to be in possession of evidence related to the production of child sexually abusive material (CSAM) as a result of the detailed investigation conducted by your affiant. Your affiant believes Ryan Romario DOOKHAN, between the dates of June 10, 2024, and August 8, 2024, did persuade a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, and DOOKHAN has reason to know that such visual depiction would be produced or transmitted using any means or facility of interstate or foreign commerce or in or affect interstate or foreign commerce in violation of 18 U.S.C. § 2251(a).

## Introduction and Agent Background

2. I am a Special Agent (SA) with Homeland Security Investigations (HSI), United States Department of Homeland Security, and have been so employed since March 2023. I am currently assigned to the HSI Sault Ste. Marie Office.

1

3. I am a graduate of the Federal Law Enforcement Training Center (FLETC) academies in Glynco, GA, which includes the Criminal Investigator Training Program and HSI Special Agent Training Program, where I received training in numerous areas of investigation including, but not limited to, weapons trafficking, contraband smuggling, and counter-proliferations. Prior to beginning a career with HSI, I was a Trooper with the Michigan State Police (MSP) from June 2014 to March 2023. During my tenure with MSP, I completed numerous basic and advanced law enforcement trainings to include, but not limited to, the MSP Trooper Recruit School, Basic Canine Handler School, Basic Investigator School, REID Interviewing Techniques and RAID Entry School. I served as a dual-purpose canine handler in the MSP Canine Unit from March 2017 to March 2023. I have completed numerous other law enforcement training courses / seminars throughout my career.

4. During my career as a law enforcement officer, I have conducted and participated in numerous investigations of criminal activity, to include but not limited to the following: illegal firearms trafficking, possession of firearms by prohibited persons, use of a firearm in furtherance of a crime of violence or drug trafficking crime, possession and distribution of controlled substances, financial/fraud crimes, child exploitation/production of child sexually abusive material (CSAM), criminal sexual conduct, kidnapping and homicide.

5. In conducting and participating in these investigations, I have been involved in the use of various investigative techniques, including but not limited to,

preparing and executing search warrants; preparing and serving subpoenas/summons; seizing evidence such as narcotics, firearms, monetary instruments, and other contraband; conducting mobile and static surveillances; and interviewing/debriefing confidential informants, other sources of information, suspects, victims, and witnesses.

6. The facts in this continuation come from my personal observations, my training and experience, and information obtained from witnesses, other special agents, law enforcement officers, documents, open source, and government databases. This continuation contains the information necessary to support probable cause and does not contain every material fact that I have learned during the investigation. I have not withheld any information that I know that would undermine a finding of probable cause.

7. This continuation is made in support of an application for a search warrant for the SUBJECT DEVICE, more specifically described in Attachment A, for evidence, instrumentalities, contraband, and fruits of violations of 18 U.S.C. § 2251(a) (the TARGET OFFENSE).

## Relevant Laws

8. Title 18, United States Code, Section 2251(a) states in part: Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in, or affecting interstate or foreign commerce, or in any Territory or

Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

### Probable Cause

9. On September 11, 2024, your affiant was contacted and briefed by Tpr. Justin Lidak of the Michigan State Police (MSP) Gaylord Post regarding a child exploitation/child sexually abusive material (CSAM) investigation he was investigating and requested assistance. Tpr. Lidak advised he was dispatched to the residence of an 11-year-old female, hereafter referred to as MV-1, in Petoskey, Michigan after her family discovered she had been engaging in sexual conversations and sending nude photographs to adult men on the Roblox and Justalk applications. Petoskey, Michigan is located within the Western District of Michigan.

10. A forensic interviewer at the Women's Resource Center of Northern Michigan's Child Advocacy Center (CAC) in Petoskey, MI conducted an interview of MV-1. During the interview, MV-1 made the following statements in sum regarding the suspect, identified as Ryan Romario DOOKHAN of Jamaica, NY.

    - She met a guy on Roblox who acted like he was her age.
    - The guy's Roblox screen name was "Ryan."
    - They traded pets in-game. She traded a cat and dog for the best pets in the game, the snow dragon and fire dragon. She described using the chat feature on Roblox to communicate.
    - This guy, who she identified as Ryan Dookhan, told MV-1 to download the Justalk application so they could talk.
    - She played with Ryan three or four times before he directed her to download the Justalk application.
    - Ryan told her his name when they were playing Roblox, and she told Ryan her name was Alex.
    - She downloaded the application sometime in or around June.
    - She used her grandmother's cellphone to communicate with Ryan.
    - She searched Ryan's name on Justalk and added him.
    - Agent's Note: The username added by MV-1 to communicate with Ryan was "ryandookhan94."
    - The first time she called Ryan, he said he would search for her house and take her from her parents if she didn't show her body parts to him.

5

- Ryan threatened to "do bad stuff" to her.
- She placed the first call, then Ryan kept calling her. She said it was a video call, but he had his camera turned off. She said it was always off.
- She thought her camera was face down, but she couldn't remember.
- She took a few pictures of her body parts and sent them to Ryan because she was scared.
- She identified this body part as her vagina. She wasn't certain, but she didn't think she wore clothing in the pictures.
- She recalled there was multiple pictures of her vagina.
- She sent a picture of her butt with her clothes on.
- Ryan expressed his pleasure in the pictures and asked her to send more.
- She recalled sending Ryan one picture of her buttocks, and two or three pictures of her vagina.
- She recalled her shorts being down for these pictures.
- She told Ryan she was 16 years old. Ryan told her he was 29 years old, which she found scary.
- At one point, she told Ryan she was 11 years old.
- She said Ryan didn't care; he kept asking for pictures.
- She said Ryan looks like an old man. She recalled he had black hair, a black beard, and looked like a "native" or "Mexican."
- Ryan told her he is from New York, and she said she is from Michigan.
- Ryan sent her one video which she didn't watch.

- Ryan sent her two photographs of his face, which she did see.

- Ryan asked her, "Do you want to see my dick cum?"

- She didn't know what that means and stopped responding.

- Ryan told her to rub her "down there," and she said, "No."

- Ryan replied, "Do it, or I'll find your location."

- She complied, because she was scared.

11. Subsequent consent searches of the phone belonging to MV-1, as well as the phone used by MV-1 to communicate with DOOKHAN were conducted by an MSP Computer Crimes Unit (CCU) Digital Forensic Analyst (DFA) in Traverse City, MI. The DFA's search revealed multiple sexually explicit conversations, photographs and videos sent and received between MV-1 and a user named ryandookhan94 via the Justalk application between the dates of June 10, 2024, and August 8, 2024.

12. During the conversations, MV-1 sent DOOKHAN multiple nude photos and videos (CSAM) of herself. The CSAM is described as the following:

    - Video (unplayable) – Image depicts MV-1 touching her vagina with her fingers while wearing underwear.

    - Video (unplayable) – Image of MV-1's vagina. MV-1 is wearing a pink shirt.

- Photograph of MV-1 holding up her pink t-shirt and covering her face exposing her left nipple. MV-1 is not wearing pants and her vagina is visible.

- Photo of MV-1 lying on her back while wearing black underwear and her buttocks are exposed.

- Photo of MV-1 lying on her back with her legs spread apart and vagina exposed.

- Photo of MV-1 lying on her back with her legs spread apart and her vagina exposed. MV-1's face is also visible.

- Photo of MV-1 sitting down with her legs spread apart and her vagina exposed.

- Video (unplayable) – Image depicts MV-1 touching her exposed vagina with her hand.

- Photos of MV-1 sitting down with her legs spread apart and vagina exposed. MV-1 is wearing a white t-shirt.

13. Furthermore, MV-1 advised DOOKHAN she is 11 years old, but he is not deterred and continued to request CSAM from her. DOOKHAN's name and multiple photographs of his face were obtained from the conversations. The photograph of DOOKHAN shown below depicts him sitting down wearing a polo shirt that bears a logo on the chest that states, "Challenge Charter School." Hanging on the wall above DOOKHAN's head is a red box that states, "Edwards O Series." Your affiant searched "Edwards O Series" and found it to

be a commercial fire suppression system that would be expected to be found in a school or commercial building.



14. Your affiant conducted a search of the Challenge Charter School in New York and found the school is an elementary, middle and high school located at three separate locations, however, are close in proximity to each other. The

Challenge Charter School official address is listed as 710 Hartman Lane Far Rockaway, NY. This school is located approximately 8 ½ miles from DOOKHAN's listed address of 11042 160th St. Jamaica, NY.

15. The following photograph and Department of Motor Vehicles (DMV) information for Ryan DOOKHAN was obtained by and HSI NY Analyst.



16. An HSI Criminal Analyst conducted a search of DOOKHAN's current employment status. The analyst found DOOKHAN is a licensed security guard in the state of New York. Your affiant contacted HSI New York duty agents and inquired about further employment information. HSI New York confirmed DOOKHAN is a security guard however they could not confirm the exact location. Post DOOKHAN's arrest, HSI was able to confirm that DOOKHAN was employed at all relevant times by Doyle Security Services and was posted at Challenge Charter Elementary School.

17. DOOKHAN stated via Justalk to MV-1 on five occasions over four dates that he was in school and declined to answer video call attempts from MV-1. Specifically, on Tuesday, June 11, 2024, between 0933 hours and 0956 hours, DOOKHAN declines a call from MV-1 and states he can't call because he is in school. DOOKHAN then sends the photo of him wearing the Challenge Charter School polo as previously described. MV-1 one later asks DOOKHAN why he is in school since she is on summer break. DOOKHAN responds, "it's my job." Furthermore, HSI Analysts were able to locate the email address associated with DOOKHAN of, teacher_boy_4_life@yahoo.com further suggesting DOOKHAN's relationship as a school employee.

18. On August 16, 2024, Tpr. Lidak obtained and served search warrants to Justalk seeking information related to the account: ryandookhan94. On September 10, 2024, Justalk responded to the search warrant with IP address information for the account.

19. On September 12, 2024, your affiant issued subpoenas related to the obtained IP address from Justalk to Verizon Communications. Verizon responded to the subpoena and provided the following information:

- Customer Name: roberto dookhan
- Account Address: 110-42 160, JAMAICA, NY 114330000
- Daytime Telephone:  2567500290
- Email Address:  roberto_dookhan@yahoo.com

20. Roberto Dookhan was identified as suspect Ryan DOOKHAN's older brother. Both Roberto and Ryan DOOKHAN reside at the same address of 11042 160th St. Jamaica, NY 11433. This address is listed on Ryan DOOKHAN's New York driver's license. Additionally, Ryan DOOKHAN's date of birth is consistent with the age of 29 which he proclaimed to MV-1.

21. On December 31, 2024, a complaint was filed in the Western District of Michigan under case number 1:24-mj-542. Judge Ray Kent issued a warrant for DOOKHAN's arrest. On January 1, 2025, Ryan DOOKHAN was arrested at the John F. Kennedy (JFK) Airport in Jamaica, NY by HSI JFK Special Agents. Upon arrest, the SUBJECT DEVICE was seized from DOOKHAN's person.

22. Following the arrest, Ryan DOOKHAN advised the arresting HSI agents the phone belonged to him. DOOKHAN unlocked the phone with this thumb print multiple times after granting written consent to search the phone.

23. Your affiant interviewed Ryan DOOKHAN on January 2, 2025. DOOKHAN waived Miranda. During the interview, your affiant displayed the phone listed in attachment A and asked DOOKHAN if the phone belonged to him. DOOKHAN stated the phone does belong to him and again unlocked the phone with his thumb print.

## Telephones, Computers and Electronic Media

24. As described above and in Attachment B, this application seeks permission to search devices belonging to or associated with Ryan Romario DOOKHAN. As discussed below, additional evidence pertaining to CSAM/child exploitation may be found on electronic devices.

25. In my training and experience, individuals conduct a considerable amount of communication using their cellular telephones. Those communications are in the form of voice calls, text messages, SMS messages, MMS messages, e-mails, social media messages and posts, and messages shared via "chat" applications.

26. I know that individuals who conspire with one another to conduct illegal activities often do so through the use of cell phones and other electronic devices, used to communicate through social media and/or contact one another by voice or text messaging. I believe that Ryan DOOKHAN would have communicated through such methods regarding the production of CSAM. I know that individuals often utilize their cellular phones and smartphones to access the internet and each time this is done the device maintains a record or "browser history," showing which websites were visited and when. I believe that Ryan DOOKHAN likely accessed the internet for the purpose of obtained and/or producing CSAM.

27. I know through training and experience, as well as through consultation with a trained cellular phone forensic examiner, that evidence of the above forms of

13

communication, and the browser history of such devices, are often kept in cell phones for months and even years. A forensic examiner may be able to recover messages and other data that were manually deleted by the user of the phone. For these reasons, it is believed that any cellular phones and smartphones utilized by Ryan DOOKHAN will contain evidence of the violations of 18 U.S.C. § 2251(a). For all of these reasons, I request authorization to seize any cellular phones, smartphones, computers, or electronic media found in DOOKHAN's.

## Conclusion

28. Based on the foregoing, there is probable cause to believe that evidence of the sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a), as DOOKHAN did persuade a minor to engage in sexual explicit conduct for the purpose of producing a visual depiction of that conduct, and the visual depiction was produced or transmitted by materials affecting interstate commerce. I therefore respectfully request that this Court issue a warrant authorizing the search of Ryan Romario DOOKHAN's cellular telephone and electronic equipment set forth in the affidavit and attachments, and the seizure of the items more specifically described in Attachment B.